UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
JOHN McGING,

                 Plaintiff,

         -against-

ROXBOROUGH APARTMENTS CORP.; and
PAUL BOGONI, individually,

                Defendants.
------------------------------------------------------------------x

**COMPLAINT**

Civil Action No.
06 Civ. 7659
(KMK)(FM)

ECF CASE

JURY TRIAL
REQUESTED

       Plaintiff, JOHN McGING, by and through his attorney, Margaret McIntyre, Attorney at Law, as and for his Complaint, alleges the following:

## INTRODUCTION

       1.    This is an action for injunctive and declaratory relief, back pay, front pay, liquidated damages, compensatory and punitive damages, attorneys' fees, costs and other relief to redress employment discrimination on the basis of age and disability and to redress retaliation against plaintiff for filing a charge of discrimination. This action is brought pursuant to the and the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §621 *et seq.* ("ADEA"), which incorporates by reference Section 16(b), 29 U.S.C. §216(b), of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §201 *et seq.*; and § 8-107(1)(a) of the Administrative Code of the City of New York.

       2.    This is also an action to redress discrimination against plaintiff for purposes of interfering with plaintiff's rights to pension and welfare benefits provided by defendants, in violation of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§1001 *et seq.*

JURISDICTION AND VENUE

3. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§1331 and 1343(a)(4) and 2201, as well as 29 U.S.C. §626(b) and (c).  In addition, plaintiff invokes the supplemental jurisdiction of this Court pursuant to 28 U.S.C. §1367(a).

4. Venue is properly laid in this district pursuant to 28 U.S.C. §1391(b) in that the unlawful employment practices alleged below were committed within this district.

PARTIES

5. During all relevant times herein, plaintiff was a resident of the State of New York, County of Bronx, and was employed by defendants in New York County.

6. Defendant Roxborough Apartments Corp. (hereinafter "defendant Roxborough") is a for-profit corporation authorized to do business in New York State, is in engaged in the business of  managing residential real estate, and maintains an office located at 340 Riverside Drive, New York, New York 10024.

7. Upon information and belief, defendant Roxborough employs over 20 employees and is an employer within the meaning of Section 11(b) of the ADEA, 29 U.S.C. §630(b); ERISA, 29 U.S.C. § 1002(5); and of §8-102 of the Administrative Code of New York City.

8. Defendant Paul Bogoni (hereinafter "defendant Bogoni") is a principal owner and employee of defendant Roxborough and serves as the manager of the building located at 251 West 92nd Street, New York, New York 10025 .   He maintains an office located at 340 Riverside Drive, New York, New York 10024.

9. Upon information and belief, defendant Bogoni is an employer within the meaning of ERISA, 29 U.S.C. § 1002(5); and of §8-102 of the Administrative Code of New York City.

2

ADMINISTRATIVE HISTORY

10. Plaintiff filed a charge of employment discrimination against defendant Roxborough based on age and disability with the United States Equal Opportunity Employment Commission (hereinafter "EEOC") on or about July 18, 2005, which was within 300 days of the last incident of discrimination.

11. On or about November 30, 2005, plaintiff amended his charge with the EEOC to add a claim of retaliation against him for filing his charge of discrimination.

12. On or about March 31, 2006, following a thorough investigation, the EEOC issued a Determination, which stated its conclusion that probable cause existed to believe that defendant Roxborough's reasons for terminating plaintiff's employment were pretextual and that plaintiff was subjected to age discrimination.

13. On June 28, 2006, EEOC issued plaintiff a Notice of Right to Sue, which was received by plaintiff shortly thereafter.  This complaint has been filed within 90 days of plaintiff's receipt of the EEOC's Notice of Right to Sue.

FACTS

14. Plaintiff is seventy-one years of age.  At all relevant times herein, plaintiff was sixty-nine and seventy years of age.

15. Plaintiff was employed by defendant Roxborough as a doorman at 251 West 92nd Street in Manhattan for approximately 11 years, from in or about 1994 until January 2005 and from September 8, 2005, to September 22, 2005.

16. At all relevant times herein, plaintiff was qualified to perform the position of doorman with Respondent.  For almost 11 years, or until approximately two and a half weeks before he was discharged from his employment in January 2005, plaintiff had an excellent employment record.

17.     Prior to his employment with defendants, plaintiff worked for 18 years as a security officer at Trump Village Section 3, in Brooklyn, New York.  In his 18 years at that job, plaintiff also had an unblemished record, and his employment at that location, which was also a union position, only ended because all unionized security officers were let go for financial reasons.

18.     Between the two jobs, plaintiff worked approximately 29 years as a doorman without receiving any written warnings criticizing his work performance.

19.     At all relevant times herein, plaintiff was disabled within the meaning of §8-102(16) of the New York City Administrative Code in that he suffered from a chronic vascular disease that caused swelling and pain in his leg and occasionally made walking difficult for plaintiff.  Plaintiff's disease is a physical impairment of his cardiovascular system.

20.     Plaintiff was also a qualified individual with a disability in that he could, with reasonable accommodation, perform the essential functions of the job that he held with defendants.

21.     At all relevant times herein, defendants were well aware of plaintiff's vascular disease, the way in which the disease affected plaintiff's legs and plaintiff's need for reasonable accommodation because of his disease.

22.     During his employment with defendants, plaintiff was eligible to receive and did receive health insurance coverage, which was among the benefits defendant offered all of its full-time employees, all of whom were members of the Service Employees International Union, Local 32BJ, AFL-CIO (hereinafter "the Union") and received benefits through the Union's plan.  The Union's plan is funded by employer contributions, including contributions required to be made by defendants on behalf of plaintiff while he was employed by defendants.

23. Upon information and belief, the health insurance plan in which plaintiff was enrolled while plaintiff was employed by defendants constitutes an employee welfare benefit plan as defined by ERISA.

24. During his employment with defendant, plaintiff was eligible for enrollment and was enrolled in a pension plan, offered through the Union, which was among the benefits defendants offered all full-time unionized employees. The Union's pension plan is funded by employer contributions, including contributions required to be made by defendants on behalf of plaintiff while he was employed by defendants.

25. Upon information and belief, the pension plan in which plaintiff was enrolled while plaintiff was employed by defendants constitutes an employee pension plan as defined by ERISA.

26. In March of 2004, plaintiff took an extended leave of absence, which he was authorized to do under the collective bargaining agreement in effect between defendants and the Union.

27. Plaintiff took his leave of absence in part for medical reasons, in part to care for his terminally ill wife and in part to visit his seriously ill sister in Ireland.

28. Plaintiff returned to work in or about September 2004, was welcomed by staff and tenants and resumed his duties as usual.

29. When plaintiff returned to work in or about September 2004, defendant Bogoni expressed hostility toward plaintiff. He was always rude when he was speaking to plaintiff and repeatedly asked plaintiff when he would retire.

30. Upon information and belief, defendant Bogoni questioned another of defendants' employees about why "the old man," referring to plaintiff, would not leave his job.

31. On January 6, 2005, Paul Bogoni issued plaintiff a letter accusing him of failing to discharge his duties, by keeping the front door open, removing screens from the storage area and wearing a baseball cap.

32. Plaintiff had never received any written disciplinary warnings from defendants prior to his receipt of the letter dated January 6, 2005. Nonetheless, the letter advised plaintiff that his "next transgression will constitute the termination of [his] job."

33. Like all of the doormen at 251 West 92nd Street, plaintiff occasionally kept the front door open for tenants and visitors while they brought in packages or needed assistance. This practice did not significantly reduce the temperature in the building.

34. Plaintiff also from time to time temporarily removed the screens from the storage area so that he could deliver packages to tenants.

35. Like the other doormen employed by defendants, including employees younger than plaintiff, plaintiff occasionally wore a baseball cap with his uniform.

36. Upon information and belief, none of defendants' other employees at 251 West 92nd Street, each of whom is significantly younger than plaintiff, has even been reprimanded for the reasons for which plaintiff was reprimanded, let alone fired for them.

37. Upon information and belief, none of the other employees employed by defendants at 251 West 92nd Street at all relevant times herein suffered from a disability.

38. Between January 8, 2005, and January 15, 2005, plaintiff was granted a one-week leave of absence from his job by his union, in accordance with his rights under the collective bargaining agreement.

39. On Saturday, January 22, 2005, plaintiff called the building to report that he was unable to come to work. He spoke to the doorman on duty, Amri Koomar, and stated that the

6

reason he was unable to come in was, "because of my leg." Plaintiff had seen his doctor the day before, on Friday, which was plaintiff's regular day off. Plaintiff's doctor had advised him to stay home for several days. His doctor also bandaged his foot and instructed him not to get the bandage wet. However, because it was the weekend and there was a snowstorm, plaintiff only took off one day from work.

40. An occasional absence, well within the limits of plaintiff's allotted sick time, was a reasonable accommodation for plaintiff's disability and did not cause defendants an undue hardship.

41. On January 27, 2005, plaintiff was fired.

42. Defendant Bogoni issued a termination letter to plaintiff, stating that plaintiff was being terminated for the previously alleged "dereliction of duties" and because plaintiff missed work on January 22, 2005. Mr. Bogoni falsely accused plaintiff of telling the doorman on duty that he was not coming in because he "didn't feel like" working because of the snowstorm.

43. The reasons offered for the termination of plaintiff's employment were pretextual.

44. Upon information and belief, defendants replaced plaintiff with an employee who is much younger than plaintiff and who has no disability.

45. Upon information and belief, one of the reasons defendants terminated plaintiff's employment was to punish plaintiff because defendants incurred costs associated with the Union health insurance benefit plan and to save defendants additional costs associated with plaintiff's enrollment in the Union health insurance benefit plan.

46. Upon information and belief, one of the reasons defendants terminated plaintiff's employment was to punish plaintiff because defendants incurred costs associated with the

7

Union pension plan and to save defendants additional costs associated with plaintiff's enrollment in the Union pension plan.

47. The Union filed a grievance of plaintiff's discharge pursuant to the collective bargaining agreement between the Union and defendant Roxborough.

48. On August 30, 2005, plaintiff agreed to withdraw the grievance filed by the Union in exchange for defendant Roxborough's agreement to permit plaintiff to return to work. The agreement expressly did not resolve plaintiff's charge of discrimination then pending with the EEOC, and plaintiff did not waive any claims other than the Union grievance of the termination of his employment that took place on January 27, 2005.

49. As a result of the settlement of his union grievance, plaintiff returned to work for defendants on September 8, 2005.

50. After plaintiff returned to work on September 8, 2005, defendant Bogoni resumed his rude and hostile behavior toward plaintiff.

51. After plaintiff returned to work on September 8, 2005, defendant Bogoni subjected plaintiff to excessive scrutiny.

52. Upon information and belief, other employees of defendants were not subject to the excessive scrutiny and criticism to which plaintiff was subjected.

53. Shortly after plaintiff's return to work, plaintiff requested permission to take one week of vacation, which plaintiff was entitled to take pursuant to the collective bargaining agreement. All employees of defendants were required to take vacation by September 15th of each year, so that employees would not be taking vacations during the holiday season. However, neither the superintendent nor defendant Bogoni ever approved the leave, and therefore plaintiff did not take it.

54. On September 21, 2005, plaintiff received another letter of warning from defendant Bogoni. The letter was filled with false accusations that plaintiff was failing to perform his duties.

55. When plaintiff received the warning letter, plaintiff concluded that defendants had not agreed to restore his job in good faith and that defendant Bogoni was determined to continue to harass him. Plaintiff also feared that defendant Bogoni would continue to make false allegations against him as a pretext for discriminatory and retaliatory motives.

56. On September 22, 2006, plaintiff involuntarily resigned from his employment with defendants.

57. Plaintiff was constructively discharged as a result of the hostile work environment to which he was subjected, which ran from the time that he returned to work in September 2004 until he was fired January 27, 2005, and which resumed in the same manner when plaintiff returned to work for two weeks in September 2005.

58. Plaintiff suffered tremendous emotional distress and anxiety as a result of defendants' actions.

59. Defendants' treatment of plaintiff was wilful and was carried out with malice and/or reckless indifference to plaintiff's rights.

<u>AS AND FOR A FIRST CAUSE OF ACTION</u>

60. Plaintiff repeats and realleges each and every allegation of paragraphs 1 to 59 of this complaint as if fully set forth herein.

61. Defendant Roxborough's acts, practices, and policies described herein constitute wilful discrimination against plaintiff on the basis of his age, thereby denying him equal employment opportunities in violation of 29 U.S.C. §621 *et seq.*

## AS AND FOR A SECOND CAUSE OF ACTION

62. Plaintiff repeats and realleges each and every allegation of paragraphs 1 to 61 of this complaint as if fully set forth herein.

63. Defendant Roxborough wilfully subjected plaintiff to a hostile work environment on the basis of his age, in violation of 29 U.S.C. §621 *et seq.* Plaintiff alleges a continuing violation on this claim.

## AS AND FOR A THIRD CAUSE OF ACTION

64. Plaintiff repeats and realleges each and every allegation of paragraphs 1 to 63 of this complaint as if fully set forth herein.

65. Defendant Roxborough's acts, practices, and policies described herein constitute willful retaliation against plaintiff on the basis of his complaints of age discrimination, in violation of 29 U.S.C. §621 *et seq.*

## AS AND FOR A FOURTH CAUSE OF ACTION

66. Plaintiff repeats and realleges each and every allegation of paragraphs 1 to 65 of this complaint as if fully set forth herein.

67. Defendants' acts, practices, and policies described herein constitute intentional discrimination against plaintiff on the basis of his age, in violation of §8-107(1)(a) of the Administrative Code of the City of New York.

## AS AND FOR A FIFTH CAUSE OF ACTION

68. Plaintiff repeats and realleges each and every allegation of paragraphs 1 to 66 of this complaint as if fully set forth herein.

69. Defendants subjected plaintiff to a hostile work environment on the basis of his age, in violation of §8-107(1)(a) of the Administrative Code of the City of New York. Plaintiff alleges a continuing violation on this claim.

## AS AND FOR A SIXTH CAUSE OF ACTION

70. Plaintiff repeats and realleges each and every allegation of paragraphs 1 to 69 of this complaint as if fully set forth herein.

71. Defendants' acts, practices, and policies described herein constitute intentional discrimination against plaintiff on the basis of his disability, in violation of §8-107(1)(a) of the Administrative Code of the City of New York.

## AS AND FOR A SEVENTH CAUSE OF ACTION

72. Plaintiff repeats and realleges each and every allegation of paragraphs 1 to 71 of this complaint as if fully set forth herein.

73. Defendants' acts, practices, and policies described herein constitute denial of plaintiff's need for reasonable accommodation of his disability, in violation of §8-107(1)(a) of the Administrative Code of the City of New York.

## AS AND FOR A EIGHTH CAUSE OF ACTION

74. Plaintiff repeats and realleges each and every allegation of paragraphs 1 to 73 of this complaint as if fully set forth herein.

75. Defendants subjected plaintiff to a hostile work environment on the basis of his disability, in violation of §8-107(1)(a) of the Administrative Code of the City of New York. Plaintiff alleges a continuing violation on this claim.

## AS AND FOR A NINTH CAUSE OF ACTION

76. Plaintiff repeats and realleges each and every allegation of paragraphs 1 to 75 of this complaint as if fully set forth herein.

77. Defendants' acts, practices, and policies described herein constitute retaliation against plaintiff for his opposition to discrimination, in violation of §8-107(7) of the Administrative Code of the City of New York.

## AS AND FOR A TENTH CAUSE OF ACTION

78. Plaintiff repeats and realleges each and every allegation of paragraphs 1 to 77 of this complaint as if fully set forth herein.

79. Defendants' acts, practices, and policies described herein constitute discrimination against plaintiff for the purposes of interfering with the attainment of his rights under the health insurance benefit plan in which plaintiff was enrolled because of his status as an employee of defendants, in violation of §510 of ERISA, 29 U.S.C. §1140.

## AS AND FOR A ELEVENTH CAUSE OF ACTION

80. Plaintiff repeats and realleges each and every allegation of paragraphs 1 to 79 of this complaint as if fully set forth herein.

81. Defendants' acts, practices, and policies described herein constitute discrimination against plaintiff for the purposes of interfering with the attainment of his rights under the

pension plan in which plaintiff was enrolled because of his status as an employee of defendants, in violation of §510 of ERISA, 29 U.S.C. §1140.

## DEMAND FOR RELIEF

WHEREFORE, plaintiff respectfully requests that this Court:

1.Declare, adjudge and decree that defendant Roxborough wilfully discriminated against plaintiff on the basis of his age, in violation of in violation of 29 U.S.C. §§621 *et seq.*

2.Declare, adjudge and decree that defendant Roxborough wilfully subjected plaintiff to a hostile work environment on the basis of his age, in violation of in violation of 29 U.S.C. §§621 *et seq.*

3.Declare, adjudge and decree that defendant Roxborough wilfully retaliated against plaintiff for his complaints of age discrimination, in violation of in violation of 29 U.S.C. §§621 *et seq.*

4.Declare, adjudge and decree that defendants discriminated against plaintiff on the basis of his age, in violation of §8-107(1)(a) of the Administrative Code of the City of New York.

5.Declare, adjudge and decree that defendants subjected plaintiff to a hostile work environment on the basis of his age, in violation of §8-107(1)(a) of the Administrative Code of the City of New York.

6.Declare, adjudge and decree that defendants discriminated against plaintiff on the basis of his disability, in violation of §8-107(1)(a) of the Administrative Code of the City of New York.

7. Declare, adjudge and decree that defendants subjected plaintiff to a hostile work environment on the basis of his disability, in violation of §8-107(1)(a) of the Administrative Code of the City of New York.

8. Declare, adjudge and decree that defendants denied plaintiff's need for reasonable accommodation of his disability, in violation of §8-107(1)(a) of the Administrative Code of the City of New York.

9. Declare, adjudge and decree that defendants retaliated against plaintiff for his opposition to discrimination, in violation of §8-107(1)(a) of the Administrative Code of the City of New York.

10. Declare, adjudge and decree that defendants discriminated against plaintiff for the purposes of interfering with plaintiff's attainment of his rights under the health insurance benefit plan in which plaintiff was enrolled because of his status as an employee of defendants, in violation of §510 of ERISA, 29 U.S.C. §1140.

11. Declare, adjudge and decree that defendant discriminated against plaintiff for the purposes of interfering with plaintiff's attainment of his rights under the pension plan in which plaintiff was enrolled because of his status as an employee of defendants, in violation of §510 of ERISA, 29 U.S.C. §1140.

12. Order defendants to reinstate plaintiff in the job of doorman with full seniority all other benefits, and or, in the alternative, award plaintiff front pay, plus interest thereon, that plaintiff is unable to earn as a result of defendants' wilful discriminatory and retaliatory actions.

13. Order defendants to pay plaintiff damages in the amount equal to the value of all back pay, plus interest thereon, that plaintiff lost as a result of defendants' wilful discriminatory and retaliatory actions.

14. Order defendant Roxborough to pay plaintiff damages in an additional amount of liquidated damages equal to the value of all back pay, plus interest thereon, that plaintiff lost as a result of defendants' wilful actions, pursuant to 29 U.S.C. §626(b) incorporating 29 U.S.C. §216, a provision of the Fair Labor Standards Act.

15. Enjoin defendants from engaging in further discriminatory or retaliatory actions against plaintiff.

16. Award plaintiff compensatory damages.

17. Award plaintiff punitive damages.

18. Award plaintiff all costs and reasonable attorney's fees incurred in connection with this action.

19. Award such other and further relief as this Court may deem just and proper.

Dated: September 22, 2006
       New York, New York

                                                /s/
                                     MARGARET McINTYRE (MM 2099)
                                     Attorney for Plaintiff
                                     225 Broadway, Suite 2515
                                     New York, New York 10007
                                     (212) 227-9987